[No. G006767. Fourth Dist., Div. Three. Oct. 27, 1988.]

DEVONA KAY BRYCE et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
CECIL HICKS, as District Attorney, etc., Real Party in Interest.

COUNSEL

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, and Thomas Havlena, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Chief Assistant District Attorney, Maurice L. Evans, Assistant District Attorney, Thomas M. Goethals, Eric W. Snethen and E. Thomas Dunn, Jr., Deputy District Attorneys, for Real Party in Interest.

OPINION

CROSBY, J.— ▪ May the prosecution dictate the place and manner in which court-supervised settlement negotiations take place? Under the separation of powers doctrine, we hold it may not: It is the responsibility of the judicial branch to manage the processing of cases under the guidance of the Constitution, the Legislature, and the Judicial Council. The authority of the executive branch to prosecute does not include the right to impose settlement rules or confer veto power over procedures adopted by the judiciary. A public prosecutor may seek *judicial* relief from procedures thought to be improper or unlawful, but not unilaterally refuse to participate.

I

The Public Defender of the County of Orange initiated this writ proceeding on behalf of two clients "and future clients" accused of felonies in the

superior court. The genesis of his complaint is contained in a policy memorandum issued by the Orange County District Attorney on June 24, 1982. (See appen. A, *post*, p. 680.) That memorandum, and the gist of the policy it announced, was reaffirmed in a second memorandum by the district attorney issued to all deputies on October 9, 1986. It stated, "The disposition of felony cases is the public's business and must be conducted in public. [¶] To effectuate this objective and our June 24, 1982[] policy memo (Restatement of Police [*sic*] Re Felony Charging and Sentencing), all discussion of felony case disposition is to be held in open court on the record. A deputy district attorney is not to engage in any such discussion with a judge and counsel for a defendant in chambers or any place outside the open courtroom. The discussion in open court shall comply with the June 24, 1982[] policy memo."

Respondent court, Judge Myron Brown, is assigned to a felony arraignment calendar. In response to the district attorney's policy outlined above, Judge Brown holds public settlement negotiations in the well of the courtroom with the court reporter recording the conversation. These meetings have been dubbed "sweater conferences" in recognition of Judge Brown's favored attire when conducting them.

On May 12, 1988, a deputy public defender representing petitioners objected to this procedure and asked to discuss their cases in chambers and off the record. He explained the creation of a record of the settlement negotiations could prejudice a defendant whose case was not resolved and prejudicial pretrial publicity might result if the press were privy to the discussions. The deputy district attorney opposed the request, and the court denied it.

The public defender then brought this petition for extraordinary relief raising a number of claims; e.g., the court's acceptance of the district attorney's policy denied rights conferred by statute, violated equal protection of the law, and threatened to trigger prejudicial media attention. Sensing a serious possibility that the tail was wagging the dog, we invited the superior court and the district attorney to file responses to the petition. The court did not reply, but the district attorney did. Ironically, the district attorney defended the trial court's implementation of the October 9, 1986, policy in part with an argument based on the separation of powers doctrine.

We then invited both the court and the public defender to respond to the district attorney's separation of powers argument. And we asked the trial court to answer the following question: "[W]hether it has adopted the district attorney's policy as a policy of the court or has determined on the merits of the question that a litigant has the power to insist that all proceedings be placed on the record in open court in the absence of a statute to the

contrary (e.g., Evid. Code, § 1042, subd. (b)), or, if neither, exactly what the court has decided[?]"

We received a candid but rather surprising letter reply from Judge Brown (appen. B, *post*, pp. 681-682). He wrote, "When the District Attorney announced in October of 1986 that they [*sic*] would no longer participate in felony case settlement conferences unless they were conducted in public and on the record, this court felt that we could not force the prosecutors to appear in chambers to discuss case settlement." After explaining the importance of settlement negotiations to the functioning of the superior court, the judge added, "Faced with the choice of no settlement conferences or public on-the-record conferences, this court attempted to work within the District Attorney's policy by bringing settlement conferences into the well of the court and having the discussions recorded by a court reporter."

Judge Brown noted that similar practices have also been adopted by other Orange County courts. He closed with a telling paragraph: "This court would prefer, however, to be able to decide the manner in which settlement conferences are conducted without being required to adopt or utilize a policy of either party. Of course, either party would be welcome to offer suggestions on how settlement conferences could be conducted most fairly and efficiently."

The district attorney weighed in with a supplemental brief which conceded that "[c]ourts have inherent and implied power to control judicial proceedings to insure the orderly administration of justice." He argued that the sweater conferences caused by his policy do not violate the separation of powers doctrine because the memo is directed only to deputy district attorneys and not the court. He asserted in addition that the procedure proposed by the public defender would violate that doctrine because it would require executive branch participation in judicial proceedings that must occur in open court and on the record. He also presented a convoluted argument that petitioners had somehow waived the issue by refusing to participate in the sweater conferences.

We attempted to resolve the matter without further litigation by granting an alternative writ heavily suggesting that Judge Brown implement his preference: "[I]t is hereby ordered that an alternative writ of mandate issue directing respondent court to *determine for itself,* in the exercise of its sound discretion, whether petitioners' settlement conferences should be reheard in chambers or in open court and whether they should be reported by the court stenographer or not, and to make a similar determination with respect to the hearing of future cases in which plea negotiations are permissible (see Pen. Code, § 1192.7), *or* to [show cause] before this court . . . why a

peremptory writ of mandate should not issue to that effect." (Italics in original.) We added, "This order is not to be construed to require any party to agree to any particular disposition or even to participate in any settlement conference beyond attending the proceeding held by the court in a place and manner of the court's choosing. This order has no application to any sentencing hearing; all such hearings shall be held in open court giving full effect to the victim's right to participate therein (Pen. Code, § 1191.1). No *binding* plea bargain or indicated sentence is to be concluded before the rights granted in Penal Code section 1191.1 have been accorded to the victim." (Italics in original.)

For reasons unknown, Judge Brown declined our invitation to put his own policy, whatever it might be, into effect. The sweater conferences continue in deference to the district attorney's threat to withhold participation in settlement negotiations. Having heard real party in interest, the district attorney, defend his imposition of a case settlement format on the superior court at oral argument and having reviewed the parties' thorough briefing of the issues presented, we conclude the procedure suggested in our alternative writ was essentially correct, although it did not go far enough.

Because the district attorney's policy and the court's acquiescence in that policy clearly offend the separation of powers doctrine, a peremptory writ must issue. If the district attorney objects to attending settlement conferences conducted pursuant to procedures selected by the superior court, he has several remedies: He may petition this or a higher court for relief or apply to the Legislature, the Judicial Council, or even the electorate. He has no option to dictate case management procedure to the superior court by refusing to participate.

## II

We should make clear that in the present writ proceeding we decline the parties' effort to draw us into a consideration of the merits of the district attorney's policy.[1] Indeed, it appears the district attorney is himself dubious

---

[1] As noted previously, the district attorney bases his policy on a slogan: "The public's business must be conducted in public." This notion, while facile and attractive, is obvious hokum as a general proposition, of course, *especially* in the context of the criminal justice system, where secrecy is often the rule and *glasnost* the exception. Police and the district attorney himself, quite properly, are usually discreet in their investigations; and the Attorney General and the district attorney alone have access to the grand jury. Police and prosecutors meet privately with judges for the issuance of search and arrest warrants, and both administer their offices behind closed doors. On the other side of the coin, defendants are sheltered by the attorney-client and self-incrimination privileges; and in the preparation of their cases, they are virtually immune from prosecution discovery, much less public examination. Also, in camera hearings are not uncommon in criminal cases: They are often dispositive of issues concerning

of the meaning and legality of that policy.[2] We have no reason to consider that matter presently because, as we shall explain further, the court should have adopted its own policy at the outset and not bowed to the threat of a party to withhold participation if the game were not played according to his rules.

---

the confidentiality of police personnel files and the award of attorneys fees for appointed counsel, and they may even result in the dismissal of cases when informants are required to be revealed and the prosecutor refuses. Jury deliberations and the deliberations of appellate courts are not subject to public scrutiny. Even plea bargaining without judicial supervision takes place in private, despite the district attorney's October 9, 1986, memo. (See fn. 2.)

[2] At oral argument, to the apparent surprise of the deputy public defender, the district attorney's representative argued his policy only applied to court-supervised settlement discussions. Private plea bargaining between prosecutors and defense counsel was both permissible and common, we were told.

We can deduce no reason why the involvement of a judge should somehow make a difference: The public's business is discussed either way. The critical point in the process is the sentencing hearing, where the judge receives input from counsel for the parties, the victim, and the accused. That hearing *must* be public (Pen. Code, § 1017); and the court must approach it with an open mind, ready to withdraw any conditional indication of a sentence or reject any bargain (and allow the defendant to withdraw the plea of guilty, of course) should the public hearing reveal the inappropriateness of a proposed disposition. In addition, the prosecutor is perfectly free at that time to rail against a sentence selected by the court and to state on the record each and every objection there may be to the court's announced intention, including a denunciation of the arguments or factual claims that might have been marshalled by defense counsel in settlement discussions.

Based on nonbinding out-of-state authority and certain antiquated American Bar Association positions of dubious value in the congested courts of metropolitan California, at oral argument the district attorney also suggested for the first time that his policy may be too liberal because judicial ethics do not condone involvement in plea bargaining at all. The notion is baseless; the process *with judicial participation* has been specifically approved by our Supreme Court in reliance on a number of previous decisions of that court and the United States Supreme Court. (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 858-860 [187 Cal.Rptr. 441, 654 P.2d 211] [citing cases].)

Sentencing is a judicial function; and when the court seeks information in order to indicate a sentence, that is a judicial, not an executive, act. The executive branch, as we will conclude, may refuse to bargain in the sense of rejecting any reduction of the charge or objecting to any proposed sentence; but it usually has no right to interfere in the process of extending an indicated sentence to a defendant willing to plead guilty to all or part of an information or indictment. (Cf. Pen. Code, § 1192.7.) Indeed, the prosecution may be required to participate by sending a representative to court with authority to speak on its behalf concerning settlement. (Cal. Rules of Court, rule 227.6.) For, although the district attorney cannot be compelled to agree to any particular disposition, he cannot withhold pertinent information and his own views concerning settlement in an effort to prevent the defendant from pleading guilty and seeking the mercy of the court. (See *People* v. *Reza* (1984) 152 Cal.App.3d 647, 651-654 [199 Cal.Rptr. 664].)

This does not mean, of course, that a court may dismiss or reduce any count without the district attorney's consent (see generally *People* v. *Orin* (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193]), only that the prosecution may not refuse to participate in the process of disposing of a case short of trial based on a plea to some or all of the counts *as charged.* Notwithstanding the settlement of some counts, remaining allegations would have to be tried. The court is not authorized to plea bargain in the sense of trading one count for another or reducing charges without the acquiescence of the prosecutor. (*Ibid.*)

The policy we *will* review, if necessary and appropriate in the future, is the one selected by the court in its discretion, uncoerced by the demands of any litigant—and then only within the narrow constraints of whether that discretion has been abused. (See, e.g., *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].) Moreover, we do not purport to instruct the court *how* to exercise its discretion. That is not the office of an extraordinary writ. (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 118 [130 Cal.Rptr. 257, 550 P.2d 161].) We direct only that the court exercise judicial discretion rather than submit to a policy emanating from the executive branch.

Article VI, section 1 of the California Constitution provides, "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. All except justice courts are courts of record." Article III, section 3 declares, "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." Some agencies do utilize judicial power under special constitutional authority through direct grants or delegation of power to the Legislature, e.g., the Public Utilities Commission (Cal. Const., art. XII, § 6), the Agricultural Relations Board (Cal. Const., art. XIV, § 1), the Alcoholic Beverage Control Appeals Board (Cal. Const., art. XX, § 22), and the Workers' Compensation Appeals Board (Cal. Const., art. XIV, § 4). The Attorney General and the various district attorneys are part of the executive branch and may *not* exercise judicial power (Cal. Const., art. V, § 13).

Court procedures may be adopted by statute by the Legislature or rule by the Judicial Council (Cal. Const., art. VI, § 6) or local court rule (Cal. Rules of Court, rules 205, 227.10, and 532.5) or devised by the supervising judge of a criminal calendar where not inconsistent with law (see, e.g., Cal. Rules of Court, rule 227.2). Also, "if statutes or judicial council rules do not specify a procedure to exercise jurisdiction with which the superior court is vested to hear a particular matter, courts have inherent power, as well as the power under Code of Civil Procedure section 187, to adopt any suitable process. [Citations.] This code section is applicable to criminal proceedings. [Citations.]" (*Telegram-Tribune, Inc.* v. *Municipal Court* (1985) 166 Cal.App.3d 1072, 1078 [213 Cal.Rptr. 7], fn. omitted.)

Rule 227.6 of the California Rules of Court, part of a section entitled "Criminal Trial Court Management Rules," provides, "A readiness conference shall be held within one to fourteen days before the date set for trial. Trial counsel shall appear and be prepared to discuss the case and determine whether the case can be disposed of without trial. The prosecuting

attorney shall have authority to dispose of the case, and the defendant shall be present in court."[3] The district attorney obviously possesses no authority to dictate the manner in which these conferences should be held (even if they occur earlier in the criminal prosecution) because he does not exercise judicial power. (See, e.g., *In re Rada W.*■ (Cal.App.).) And "[w]hen the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (*People* v. *Tenorio* (1970) 3 Cal.3d 89, 94 [89 Cal.Rptr. 249, 473 P.2d 993].)

In *Gray* v. *Municipal Court* (1983) 149 Cal.App.3d 373 [196 Cal.Rptr. 808], we dealt with another attempt by the district attorney to usurp judicial power. There, the district attorney elected to file all welfare fraud prosecutions in a particular municipal court district for the convenience of his welfare fraud unit. We held he had no basis to complain when the judges of that court granted defense motions to remove the cases to other municipal courts in districts where the defendants resided: "The transfer of a preliminary hearing falls within the magistrate's inherent power to manage the calendar. ' " 'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them might be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.' " ' [Citations.]" (*Id.,* at p. 377.)

As the Legislature may not by statute condition the exercise of judicial power on the consent of a district attorney (*People* v. *Tenorio, supra,* 3 Cal.3d at p. 94), it surely follows that the district attorney cannot acquire any such authority by fiat. In short, the court erred in declining our invitation to eschew the district attorney's policy and implement settlement procedures of its own selection. (See, e.g., *Hoines* v. *Barney's Club, Inc.* (1980) 28 Cal.3d 603, 613 [170 Cal.Rptr. 42, 620 P.2d 628, 26 A.L.R.4th 229];

---

[3] Again, for the first time at oral argument, the district attorney suggested this rule of court is itself an unconstitutional invasion of the separation of powers, although the rule is cited several times in his written submissions as somehow supportive of his policy. The notion is hardly worthy of extended discussion.

The district attorney may have public responsibilities distinguishing him from other litigants, but all litigants are bound to observe court orders. If the orders are unsound, the district attorney is as entitled to protest as any other litigant, but nothing more. The issue before us today is not the constitutionality of rule 227.6. The district attorney has willingly attended settlement conferences up to now under his own announced policy. If the district attorney seriously believes rule 227.6 is unconstitutional, he may apply for his own extraordinary writ to examine that extraordinary contention.

*People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 65 [113 Cal.Rptr. 21, 520 P.2d 405].)

If the court adopts the procedure advocated by the public defender of in-chambers, off-the-record conferences, the district attorney can then make his objections to a higher court or seek relief by legislation or rule. If the court adopts a policy which is not to the liking of the public defender, that will be the time for *him* to do the same on behalf of present and future clients. (*In re Brindle* (1979) 91 Cal.App.3d 660, 670 [154 Cal.Rptr. 563] [public defender may assert rights of prospective clients in order to improve the administration of justice].) Meanwhile, neither side is free to ignore court orders. Any litigant who wilfully disobeys an order to attend a settlement conference is subject to appropriate sanctions.

The alternative writ is discharged. Let a peremptory writ issue directing the trial court to adopt and enforce its own procedures for readiness or settlement conferences within the limits of the rules of court noted above, Code of Civil Procedure section 187, and the Penal Code (see, e.g., Pen. Code, §§ 1191.1-1191.3, 1192.1-1192.7 [restricting negotiated pleas in certain instances]) and to exercise the judicial power at its disposal to obtain obedience to its orders.

Sonenshine, Acting P. J., and Wallin, J., concurred.

A petition for a rehearing was denied November 15, 1988, and the petition of real party in interest for review by the Supreme Court was denied January 5, 1989.

APPENDIX A

## County of Orange

# MEMO

FSSO-123.1

DATE: June 24, 1982

ALL DEPUTIES                    DEPT/DIST: _____

OM _____ CECIL HICKS

SUBJECT: ____ Restatement of Policy re Felony Charging and Sentencing (Revised)

To implement the provisions of Proposition 8 the following policy shall hereafter be observed...

A. All Felonies
   1. Felonies are state prison cases.
   2. In those cases where discussions between defense counsel, judge and Deputy District Attorney relating directly or indirectly to the potential sentence would otherwise be permissible, the discussion shall be conducted on the record in open court.
   3. A suspect, based upon sufficient evidence to convict shall be charged with the felony crime(s) which most accurately reflect the criminal conduct involved.
   4. An accused, based on evidence sufficient to sustain the allegation(s) shall be charged with all appropriate special enhancement allegations.
   5. An accused shall be required to admit as true each special enhancement allegation.

B. Serious Felonies
   1. Serious felonies for purpose of this memo are:
      All felonies named in P.C. §1192.7(c), homicide, 1st degree burglary, sale or possession for sale of LSD, heroin or PCP, sale or possession for sale of significant quantities of other drugs or narcotics, substantial theft related cases, escape with force, cases where the accused has a significant criminal background, all cases where the accused is ineligible for probation, driving while under the influence of alcohol, drugs, narcotics or any other intoxicating substance, and all other cases involving a threat to public safety.
   2. An accused charged with serious felony(s) shall be required to enter a plea of guilty to each such charge(s).
   3. There shall be no plea bargaining as defined in P.C. §1192.7(b).
   4. No sentence recommendation other than state prison or where appropriate, death, shall be made in these cases.
   5. Exceptions are subject to P.C. §1192.7(a) and Section D below.

C. Felonies other than those described in Section B above.
   1. The accused shall be required to enter a plea of guilty to the felony crime(s) which most accurately describes his criminal conduct.
   2. An accused charged with multiple felonies resulting from a single transaction shall be required to enter a guilty plea to at least one third of the felonies charged.
   3. An accused charged with multiple felonies resulting from separate transactions shall be required to enter a guilty plea to at least one felony covering each separate transaction.
   4. A prosecutor may agree to a felony sentence recommendation of no immediate state prison time, but nothing else. Such recommendation must first be approved by the appropriate Deputy District Attorney V upon written request expressing in detail the reasons why such recommendation should be made. Such requests will be reviewed weekly by the Assistant District Attorneys.

D. Exceptions
   Any request for exception to these guidelines should be submitted in writing to the appropriate Assistant District Attorney, explaining in detail the reasons why such exception should be made. The Assistant District Attorneys will review such reports with the Chief Deputy and the District Attorney at the weekly executive staff meeting. Trial and evidentiary problems are generally not valid considerations in varying these guidelines.

APPENDIX A

APPENDIX B

Superior Court of the State of California
County of Orange

700 CIVIC CENTER DRIVE WEST
P. O. BOX 1994

Chambers of
MYRON S. BROWN
Judge of Superior Court

Santa Ana, California 92702-1994

June 22, 1988

(714) 834-3734

The Honorable Harmon G. Scoville, Presiding Justice
The Honorable Thomas F. Crosby, Jr., Associate Justice
The Honorable Sheila P. Sonenshine, Associate Justice
The Honorable Edward J. Wallin, Associate Justice
**Court of Appeal, Fourth Appellate District**
**600 West Santa Ana Boulevard**
**Santa Ana, California 92701**

RE:  <u>Bryce et. al. v. Superior Court</u>, Case Number G006767

Dear Presiding Justice and Associate Justices
of the Court of Appeal:

Pursuant to the Court's request of June 14, 1988, Respondent Court hereby submits this letter in response to the Court's inquiries.

When the District Attorney announced in October of 1986 that they would no longer participate in felony case settlement conferences unless they were conducted in public and on the record, this court felt that we could not force the prosecutors to appear in chambers to discuss case settlement.

On the other hand we believed and continue to believe that for the efficient utilization of limited judicial and court resources, some form of settlement negotiation is essential.

As this court well knows, in both civil and criminal litigation, actual trial is often unnecessary and justice can be ensured through pretrial settlement without wasting tax dollars.

Faced with the choice of no settlement conferences or public on-the-record conferences, this court attempted to work within the District Attorney's policy by bringing settlement conferences into the well of the court and having the discussions recorded by a court reporter.

Superior Court of the State of California

County of Orange

TO: The Honorable Harmon G. Scoville, Presiding Justice
The Honorable Thomas F. Crosby, Jr., Associate Justice
The Honorable Sheila P. Sonenshine, Associate Justice
The Honorable Edward J. Wallin, Associate Justice
June 22, 1988
Page 2

Other (Municipal and Superior) courts in this county that handle felony matters conduct settlement conferences in some form, on the record and in public, but not necessarily in the well of the court.

Respondent Court has utilized public, on-the-record settlement conference procedures, because it would be a waste of money and resources to abandon the use of settlement conferences altogether in criminal matters, and we feel that we cannot force the District Attorney to participate in such conferences in the traditional "in chambers" setting in the face of their stated policy not to do so.

It has always been the practice of this court when a guilty plea is being entered, to require (through the use of the "Tahl" form and oral statements) open court on the record advisement of rights, waiver of rights, entry of plea, and additional statements of reasons as required by statutory and case law, and that will continue to be the practice.

This court would prefer, however, to be able to decide the manner in which settlement conferences are conducted without being required to adopt or utilize a policy of either party. Of course, either party would be welcome to offer suggestions on how settlement conferences could be conducted most fairly and efficiently.

Sincerely,

MYRON S. BROWN
Presiding Judge
Master Criminal Calendar Court
Orange County Superior Court

MSB:mk
88-003