[No. G005838. Fourth Dist., Div. Three. Apr. 5, 1989.]

THE PEOPLE, Plaintiff, v.
RICHARD M. COOK, Defendant and Respondent;
CECIL HICKS, as District Attorney, etc., Objector and Appellant;
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent.

COUNSEL

Werve & Stafford and Albert P. Ballog, Jr., for Objector and Appellant.

Edwin L. Miller, Jr., District Attorney (San Diego), Peter C. Lehman, Kerry Wells Hamor, Deputy District Attorneys, Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, as Amici Curiae on behalf of Objector and Appellant.

A. William Bartz, Jr., for Defendant and Respondent.

No appearance for Respondent Superior Court.

Rutan & Tucker and Philip D. Kohn as Amici Curiae on behalf of Respondent Superior Court.

## OPINION

**WALLIN, J.**—The Orange County District Attorney prosecuted Richard Cook and a codefendant for joint possession of 2.29 grams of cocaine

(Health and Saf. Code, § 11350) and possession of the same cocaine for sale (Health & Saf. Code, § 11351). Although early in the proceedings a prosecutor admitted the possession for sale count was weak, he and his successors repeatedly refused to dismiss it so a pretrial disposition could be effected, much to the annoyance of Cook's attorney and the trial judge. Ultimately, the matter was tried to a jury for several days. At the conclusion of the prosecution's case the trial court acquitted Cook of possession for sale (Pen. Code, § 1118.1) and referred him to a drug diversion program (Pen. Code, § 1000) on the remaining count. This was the disposition Cook had sought from the beginning.

As penance for his intransigence, the trial court ordered the district attorney to pay Cook $3,000 in sanctions pursuant to Code of Civil Procedure section 128.5.[1] The court found Cook was prosecuted on a count "without a supporting basis in law or fact," and as a result was forced to bear the additional attorney's fees associated with a jury trial. The district attorney and his amici curiae challenge the order, contending section 128.5 applies only in civil proceedings. We agree and reverse.

I

We need not explore the facts of this case in depth. Suffice it to say the possession for sale count against Cook was indeed unimpressive.

The issue, however, is not the prosecution's wisdom, or lack thereof, in subjecting this defendant to indefensible legal harassment; it is whether the Legislature intended section 128.5 to apply in criminal actions.[2] It did not.

Cook maintains the statute's reference to "[e]very trial court" should end the inquiry and cause us to conclude civil *and* criminal trial courts may impose sanctions for bad faith actions which are frivolous or cause unnecessary delay. He argues that since the statute's wording is unambiguous, it is unnecessary to examine extrinsic materials to gain insight into legislative intent.

In determining intent, courts should *first* look to the plain language of a statute (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323]). But

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

[2] Section 128.5, subdivision (a) provides: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ."

unless its wording is open to only one possible interpretation—which is not the case here—this is but the first step in the analysis. Section 128.5 does not specify whether it relates to all cases or solely to civil actions. Although amici curiae on behalf of the superior court make much of the section's location within the Code of Civil Procedure, we are unpersuaded its placement alone can resolve the issue.

Section 128.5 is in part I of the code, entitled "Courts of Justice." By definition the superior court is included in this category. More specifically, section 128.5 is found in article 2 (Powers and Duties of Courts) of chapter 6 (General Provisions Respecting Courts of Justice). Amici curiae for the superior court note that some sections in part I have been held applicable to criminal actions (§ 170.6; *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350 [5 Cal.Rptr. 703, 353 P.2d 311]; § 177; *People* v. *Gonzales* (1942) 20 Cal.2d 165 [124 P.2d 44]); § 187; *Telegram-Tribune, Inc.* v. *Municipal Court* (1985) 166 Cal.App.3d 1072 [213 Cal.Rptr. 7]); and § 284; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65]).

But section 170.6, subdivision (1) specifically applies to judges in "any civil or criminal action." Sections 177 and 187 merely discuss general powers of all courts. Section 177, directed to "[e]very judicial officer," empowers judges to preserve order in the court, compel testimony and obedience to court orders, and administer oaths. Section 187 declares that where a court has been given jurisdiction, all the means necessary to carry it out are also given. Section 284 provides for substitution of attorneys. These latter three sections are obviously intended to apply to all courts. And none carries a declaration of legislative intent at odds with this construction. Accordingly, to determine whether section 128.5 applies to criminal cases, we are required to explore its legislative history.

█ The Legislature itself declared its intent in enacting section 128.5: "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for the *expeditious processing of civil actions* by authorizing monetary sanctions now not present[ly] authorized by the interpretation of the law in *Baug[u]ess* v. *Paine* (1978) 22 Cal.3d 626."[3] (Stats. 1981, ch. 762, § 2, p. 2968, italics supplied.) █ A "cardi-

---

[3] In *Bauguess* an angry judge aborted a personal injury trial after an attorney looked at jurors' notes on xerox copies of an exhibit. (The copies themselves had been admitted into evidence.) Believing the mistrial was the attorney's fault, the court ordered he pay his opponent $700 in attorney's fees as sanctions. Our Supreme Court held the sanctions were not authorized by statute and not inherently within the court's power. (*Bauguess* v. *Paine, supra,* 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942].)

This was the situation the Legislature sought to remedy by enacting section 128.5. Nothing in *Bauguess* even hints the court was considering criminal matters. Quite the opposite is true: the discussion centered on subjects that arise only in civil cases, e.g., recovery of attorney's fees on equitable principles and the private attorney general theory. (*Bauguess* v. *Paine, su-*

nal principle of statutory construction" is that we must accept such declarations of legislative intent. (*Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 10-11 [106 Cal.Rptr. 761, 507 P.2d 65].)

▄ Cook attempts to dodge the significance of this language by noting that because the superior court's departments are interdependent, burgeoning criminal calendars spill over into civil courts, spelling doom for prompt disposition of civil cases.[4] Hence, he contends, granting trial courts power to impose monetary sanctions for frivolous criminal prosecutions indirectly effectuates the purpose of the statute.

His argument is true as far as it goes, and we are not unsympathetic to the plight of civil courts held hostage to criminal trials that, with the exercise of the slightest prosecutorial discretion, could be avoided. But had the Legislature intended so radical a measure as ceding to the judiciary the power to punish the executive branch for meritless prosecutions, the idea would have been vigorously debated rather than ignored.

All of the documents prepared for the Assembly and Senate state or assume the bill relates to civil actions. The Senate Judiciary Committee report for Senate Bill No. 947, under "KEY ISSUE," asks: "SHOULD A TRIAL COURT HAVE THE AUTHORITY IN A CIVIL ACTION TO ASSESS ATTORNEY'S FEES AGAINST A PARTY, OR A PARTY'S ATTORNEY, WHO CAUSES UNNECESSARY DELAY OR TAKES FRIVOLOUS ACTIONS?" (Italics added.) The staff summary prepared for the Assembly Judiciary Committee fails to use the qualifier "civil," but this appears to be a mere oversight, as the gist of the summary shows. Its two main points are these: First, Senate Bill No. 947 is a response to *Bauguess* v. *Paine*. Second: "Judge [Robert] Weil of the Los Angeles Superior Court states that his court's 'law and motion departments are cluttered up with (frivolous) motions that consume vasts [*sic*] amounts of judicial time and require unnecessary and espensive [*sic*] appearances to be made by lawyers resisting these motions.' He therefore urges enactment of this bill in order to 'empower the trial court judge to impose sanctions in the form of attorneys' fees in favor of parties who must resist frivolous motions brought solely for the purpose of delay.'"

---

*pra,* 22 Cal.3d at pp. 635-637.) It follows that the Legislature, moving to fill the void created by *Bauguess,* was not contemplating criminal matters, either.

[4] Amici curiae on behalf of the superior court make the same argument and take it a step further, arguing the Orange County District Attorney's policy of no felony plea discussions except in open court has markedly increased criminal trials and upped the backlog of civil cases. (See *Bryce* v. *Superior Court* (1988) 205 Cal.App.3d 671 [252 Cal.Rptr. 443].) Accordingly, they say, trial courts must be able to impose sanctions in criminal cases if civil cases are to be processed efficiently. No matter how compelling the need, we cannot rewrite the statute for calendar management purposes. These concerns are properly addressed to the Legislature.

These concerns relate only to civil cases: The "law and motion departments" in question handle solely civil matters.

The summary prepared for the Senate Republican Caucus also quotes Judge Weil on the lamentable state of his court's law and motion department and the need for a sanctions statute in light of *Bauguess*. The Senate Democratic Caucus's summary discusses *Bauguess* and under "Arguments in Support," quotes Judge Weil again, albeit without attribution. Nowhere in these documents is there any reference to the inclusion of criminal actions, and the overwhelming import of the remarks is just the opposite.

Only one case contains language implying section 128.5 may be invoked in a criminal case. *People* v. *Johnson* (1984) 157 Cal.App.3d Supp. 1 [204 Cal.Rptr. 563], in dictum, appears to authorize the section's use to punish a prosecutor for his tardy appearance. (*Id.,* at p. Supp. 8, fn. 5) The appellate department's offhand remark in that footnote is unsupported by an authority and cannot dilute the Legislature's clear statement of its intent. There is no question section 128.5 was never intended to apply to criminal actions.

The order is reversed.[5]

Scoville, P. J., and Crosby, J., concurred.

On May 3, 1989, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 29, 1989.

---

[5] In light of our decision, we need not address the additional defenses raised by one of the district attorney's amici curiae, which relate to prosecutorial immunity and the separation of powers doctrine.