[No. A040722. First Dist., Div. One. Aug. 24, 1989.]

TOWN OF WOODSIDE, Plaintiff, Cross-defendant and Respondent,
v.
RAY L. GAVA et al., Defendants, Cross-complainants and
Appellants;
TICOR TITLE INSURANCE COMPANY OF CALIFORNIA,
Cross-defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

**COUNSEL**

Steven H. Bovarnick and Hunter & Bovarnick for Defendants, Cross-complainants and Appellants.

Robert J. Lanzone, Jean B. Savaree and Aaronson, Dickerson, Cohn & Lanzone for Plaintiff, Cross-defendant and Respondent Town of Woodside.

John M. Ottoboni, Melva M. Vollersen and Ferrari, Alvarez, Olsen & Ottoboni for Cross-defendant and Respondent Ticor Title Insurance Company of California.

**OPINION**

**HOLMDAHL, J.**—Defendants appeal from a summary judgment entered against them on their cross-complaint against a title insurance company. Defendants alleged the insurance company breached an insurance contract by failing to provide a defense and by negligently failing to disclose the existence of a scenic easement on their property.

The judgment in favor of the title insurance company is affirmed.

Defendants also appealed from a judgment in favor of Town of Woodside, entered in accordance with directions from this court. This court granted town's motion to dismiss that appeal, and ordered defendants to appear at oral argument prepared to show why they should not be sanctioned for the filing of a frivolous appeal.

Sanctions will be imposed on defendants for the filing of a frivolous appeal.

*Statement of Facts and Procedural History*

Ray L. and Nancy Ann Gava own a home in Woodside. The parcel of land on which the home is located is subject to a 100-foot wide "scenic"

easement adjacent to La Honda Road. The easement was accepted by the Town of Woodside (hereafter, Town) as a condition for the approval of the subdivision parcel map. The easement was to be kept in its "natural state."

In May 1980, the Gavas commenced construction of a "sport court" and other improvements (ornamental garden, retaining walls, irrigation system, and gravel driveway). These improvements encroached upon the scenic easement. After the Gavas refused a request from Town to remove the improvements, Town filed a complaint, in November 1982, in San Mateo County Superior Court.

The Gavas filed a cross-complaint in which they sought damages from Town under the theory of inverse condemnation, and from Ticor Title Insurance Company of California (hereafter, Ticor) for the alleged breach of a title insurance policy, and for negligence. The Gavas also sought to quiet title to the portion of their property subject to the easement.

The trial court denied Ticor's motion for summary judgment on the causes of action against it. The parties agreed to bifurcate certain issues, which led to the initial determination of the issues between the Gavas and Town.

On June 17, 1985, the trial court entered its judgment. The court found the scenic easement valid and enforceable. However, rather than granting the relief Town requested (removal of all the encroaching improvements), the court ordered only a reduction in the height of a fence surrounding the sport court and the removal of lights which illuminate the sport court. Additionally, in what was apparently a settlement devised by the court and incorporated into the judgment, the court ordered Ticor to pay for the modifications of the sport court in exchange for the dismissal of the cross-complaint.

Town appealed from the judgment. In an opinion filed April 24, 1987, this court reversed the judgment and directed the trial court to order the Gavas to remove all improvements located upon the easement. Ticor was not a party to the appeal. However, because the settlement of the cross-complaint was part of the judgment, this court also directed the trial court to determine the rights and liabilities as between the Gavas and Ticor. The Supreme Court denied the Gavas' petition for a hearing.

Following the issuance of the remittitur, Town applied for and received from the trial court a "Judgment After Appeal." That judgment, filed October 8, 1987, incorporated this court's directions with respect to Town,

and ordered the Gavas to remove all improvements located upon the easement. The Gavas appealed from that judgment.

Ticor, on November 13, 1987, moved for summary judgment, or alternatively, summary adjudication of issues. Following a hearing held in December, the trial court granted Ticor's motion and entered judgment in favor of Ticor on the cross-complaint. The Gavas appealed from that judgment.[1]

Town moved to dismiss the appeal as to it, and requested sanctions. In an order filed February 9, 1989, this court directed the Gavas to show cause as to why they should not be sanctioned for filing a frivolous appeal. After receiving briefs from the parties, this court issued a second order, on April 7, dismissing the Gavas' appeal as to Town, and advising the parties that oral argument would be heard on the issue of sanctions at the time the cause was scheduled for a hearing on the issues between the Gavas and Ticor.

We will first discuss the merits of the appeal from the judgment in favor of Ticor. Then we will discuss the matter of sanctions against the Gavas for their (dismissed) appeal from the judgment in favor of Town.

. . . . . . . . . . . . . . . . . . . . .*

*Sanctions Against the Gavas (Town's Action)*

The following facts, relevant on the issue of sanctions with respect to the dismissed appeal as to Town, were gleaned from the record on appeal, and the declarations and exhibits submitted in response to the order to show cause.

In a letter dated July 27, 1987, Town informed the Gavas that it had received the remittitur from this court. Town inquired as to the Gavas' "plans to comply with the injunctive relief that had been requested by the Town."

A letter dated August 20 indicates Town received no response to the July 27 letter. The August 20 letter warned that Town would "proceed with Court action" if necessary to resolve the matter.

The Gavas responded on August 24. They stated they did not intend to act until they received a hearing in the trial court, and that court issued

---

[1] The two appeals were assigned one appellate case number.
* See footnote, *ante,* page 488.

another judgment. The letter concluded, "[They] have not lessened there [*sic*] resolve on this matter and will continue to exercise all of their rights that are their due and to pursue this matter before all courts to the fullest extent."

On October 8, Town filed an ex parte "Aplication [*sic*] for Issuance of Judgment After Appeal." Town requested the entry of an amended judgment in accord with the decision of this court. On the same day, the trial court filed its judgment after appeal. The judgment, in conformity with this court's decision, directed the Gavas "to remove all improvements located upon the easement except those allowed by the language of dedication as set forth in the owner's certificate."

The Gavas moved to vacate the judgment after appeal. Among other contentions, the Gavas claimed the judgment after appeal did not comply with this court's decision. In a letter dated October 20, Town invited the Gavas to redraft the judgment and, if acceptable, Town would stipulate to its entry. The Gavas refused the offer, and asserted they were still entitled to a hearing in the trial court.

The trial court denied the Gavas' motion to vacate the judgment.

In a letter dated December 3, Town requested that the Gavas contact Don Woolfe, Town's planning director, in order to develop a plan to remove the sport court.

The Gavas filed a notice of appeal from the judgment after appeal on December 7.

The Gavas, Woolfe, and counsel for Town, the Gavas' and Ticor met on March 1, 1988, to discuss, according to a summary drafted by counsel for the Gavas, "the status of the improvements." Woolfe set forth his ideas on the work that needed to be done to correct the encroachment upon the easement. The Gavas wanted to discuss improvements on a neighbor's property. When Woolfe indicated he did not think improvements on the neighbor's property were relevant, the Gavas responded they "felt that the matters were completely intertwined . . . ."

The parties met again, at the Gavas' residence, on March 8. Again counsel for the Gavas drafted a summary of the meeting. Woolfe inspected the Gavas' improvements and the neighbor's improvements. Woolfe stated he would prepare a written report. Jean Savaree, deputy town attorney, recalled that Mr. Gava stated the sport court was very important to him and it would remain "as long as he had a dime in his pocket."

Woolfe prepared his written recommendations and submitted them to Savaree in a letter dated April 7. Savaree forwarded the recommendations to the Gavas. Woolfe recommended the removal of the sport court and restoration of the underlying terrain to its natural contour, but he concluded the other improvements within the easement (paths, plants, and retaining walls) would not have to be removed because their removal would do more harm than good.

A letter dated May 25 indicated the Gavas were "considering the proposal." When the Gavas met with Woolfe in June, they asked him whether he had considered the fact the covenants, conditions, and restrictions (CC&Rs) were going to expire in the year 2003. The Gavas also suggested a settlement conference at this court. Town responded that it failed to see the relevance of the CC&Rs, or the benefit to be gained by a settlement conference.

Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal. Rules of Court, rule 26(a).)[9] ■ The California Supreme Court has announced that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

■ Town believes that under either the subjective or the objective standards set forth in *Flaherty,* the Gavas' appeal as to Town had no merit. Town suggests the only motive for the appeal was to delay the implementation of this court's April 1987 decision.

The pattern revealed by the facts cited above, and the complete lack of merit of the appeal supports the inference that the only motive for this appeal was delay. The Gavas claim they "worked closely with Respondent in order for both parties to determine what Respondent is requiring under the terms of the amended judgment . . . ." But the facts reveal the Gavas were completely uncooperative and were constantly raising irrelevant matters (e.g., improvements on neighboring properties and the CC&Rs). The Gavas continue to raise irrelevant matters in their appellate briefs (e.g.,

---

[9] Rule 26(a) provides, in relevent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

whether the trial court's "amended" judgment complies with this court's decision to "modify" the judgment).

The Gavas contend this motion could have been avoided had Town provided notice of its ex parte application for entry of amended judgment. The entry of the amended judgment was, however, simply a ministerial act. No notice was required. Given the Gavas' conduct, it appears unlikely that such notice would have made any difference. Twice before the filing of its application, Town inquired of the Gavas how they intended to comply with this court's decision. The Gavas stonewalled Town. After the entry of the judgment after appeal, the Gavas rejected an opportunity to submit their own judgment.

The Gavas assert they have a right to appeal from the judgment after appeal, because the trial court did not follow this court's directions. (Citing *Overstreet* v. *County of Butte* (1964) 57 Cal.2d 504, 507 [20 Cal.Rptr. 631, 370 P.2d 335].) Certainly the judgment was appealable. However, no reasonable attorney could have concluded the trial court did not follow the directions of this court with regard to the issues between the Gavas and Town, or that an appeal on that ground could have any merit. The directions were simple. This court directed the trial court "to order the Gavas to remove all improvements located upon the easement, except those allowed by the language of the dedication as set forth in the owner's certificate."[10] The trial court's judgment after appeal used virtually identical language. At the hearing on the Gavas' motion to vacate the judgment after appeal, the trial court asked counsel for the Gavas what was wrong with the judgment with respect to Town. After failing to receive a satisfactory response, the court asked, "But insofar as the Town of Woodside is concerned, it's simply a ministerial act which has been accomplished[?]" Counsel for Gavas answered, "Yes."

■ The Gavas propose that if the appeal as to Town is deemed frivolous, the penalty should be limited to Town's costs and attorney's fees incurred in defending the appeal. The Gavas cite the recent opinion in *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581]. The *Finnie* opinion did conclude an appropriate measure of sanctions, "in part," was the respondent's costs and attorney's fees. (*Ibid.*) However, the opinion stated frivolous appeals are a waste of the appellate system's time and the taxpayer's money. (*Ibid.*) Therefore, the court ordered appellants' counsel to pay, in addition to respondent's costs and attorney's fees, the cost to process an average civil appeal ($2,324). (*Id.* at pp. 17-18; see also *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96 [260 Cal.Rptr. 369] [$3995].)

---

[10]Since the issuance of this court's decision, the Gavas have never contended that there is a legal basis for allowing the improvements to remain.

At oral argument, we asked Town to submit a cost bill in order to assist this court in setting the amount of sanctions to be awarded to Town. (See *Finnie* v. *Town of Tiburon, supra,* 199 Cal.App.3d at p. 17; *Zimmerman* v. *Drexel Burnham Lambert, Inc.* (1988) 205 Cal.App.3d 153, 164-165 [252 Cal.Rptr. 115].) Town filed a "Memorandum of Costs and Attorneys Fees," which states $5,370 was expended responding to the Gavas' appeal. This amount appears reasonable, and no objection to this amount has been received. The Gavas are, therefore, ordered to pay Town this amount as and for its costs and attorney's fees incurred defending the appeal. In addition, we will follow *Finnie* and order the Gavas to pay the cost to the taxpayers to process an average civil appeal. ■ ■■■■ This opinion constitutes the written statement of reasons required by *Flaherty*.[11]

The judgment in favor of Ticor is affirmed. Ray L. and Nancy Ann Gava are ordered to pay Town $5,370 as a sanction for pursuing a frivolous appeal. The Gavas are ordered to pay the clerk of this court $2,324 as further sanction for pursuing a frivolous appeal.

Racanelli, P. J., and Newsom, J., concurred.

---

[11] Before penalties for prosecuting a frivolous appeal are imposed, the party to be sanctioned must be given fair warning, an opportunity to respond to the charges, a hearing, and a statement of reasons for the penalty. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 654.) These requirements have been met, inasmuch as Town requested sanctions, this court ordered the Gavas to show cause why they should not be sanctioned, and the Gavas were given an opportunity to respond in writing and at a hearing.